694 P.2d 216

**STATE of Arizona, Appellee,**

v.

**Walter Thomas HUTTON, Appellant.**

No. 6247.

Supreme Court of Arizona,
En Banc.

Jan. 7, 1985.

Robert K. Corbin, Atty. Gen., by William J. Schafer III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

John Ditsworth, Tucson, for appellant.

HAYS, Justice.

Appellant, Walter Thomas Hutton, was charged with first-degree murder. A.R.S. § 13–1105. He was tried by a jury and convicted of manslaughter. A.R.S. § 13–1103. The jury also found that, at the time this offense was committed, appellant was on probation. Pursuant to A.R.S. § 13–604.01(A), appellant was sentenced to life imprisonment without possibility of parole for twenty-five years. Appellant appeals from his conviction and sentence. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5 and A.R.S. §§ 13–4031 and 13–4035. We affirm appellant's conviction and sentence.

Appellant raises six issues on appeal:

I. Did the court of appeals err in reinstating the first-degree murder charge based on the grand jury indictment?

II. Did the trial court err in giving a premeditation instruction?

III. Did the trial court err in giving a manslaughter instruction?

IV. Was there sufficient evidence to support the manslaughter conviction?

V. Did the trial court err in not granting a mistrial based on jury misconduct?

VI. Does appellant's sentence violate the eighth amendment's proscription against cruel and unusual punishment?

The facts follow. In the early morning hours of December 10, 1982, appellant was present at an illegal after-hours bar and gambling joint called "Big Arnold's." The victim, Francisco Castano, was also present. Castano repeatedly tried to purchase items at the bar with Mexican pesos. The owner of the bar, Arnold Thomas, refused to accept Castano's Mexican money. The state's theory was that the appellant saw these attempted transactions, concluded Castano had money, and decided to rob him.

About 3:30 that morning, Willard Ward, a South Tucson police officer, saw a white station wagon parked in the middle of a street near "Big Arnold's." The driver's side door was open. As Ward approached in his marked patrol car, he saw two men struggling. The larger man was black. He was holding a smaller man with his left hand and striking him with his right. Ward was unable to see whether the larger man was armed with a knife. Ward watched as the smaller man, Castano, fell to the ground. Ward saw appellant bend over Castano's body. When appellant saw Ward, he ran. Appellant's girlfriend, who was still in the white station wagon, drove away. Ward went to Castano's aid. He observed that Castano had two stab wounds in the chest and he heard the victim sucking air through the wounds into his lungs. Castano told him, "Man, I'm hurt real bad." Castano died shortly after reaching Kino Hospital.

Ten to fifteen minutes later, Ward saw the white station wagon at a nearby house. He watched as other officers stopped the vehicle. Officers found appellant in the passenger's seat and his girlfriend in the driver's seat. Appellant had fresh cuts on his hand and face. Bloody tissue paper was found in the car. Appellant claimed he received these injuries while working on the transmission of his vehicle. Appellant had a 1000 peso bill in his pocket.

At trial appellant claimed he did not stab Castano. He testified that he and his girlfriend were driving home from "Big Arnold's" when he heard something hit the side of his car. He stopped the car, got out, and saw Castano standing by the side of the road. Appellant noticed Castano had blood on his face. When appellant approached to determine what had happened, Castano attacked him. Appellant maintained that he merely defended himself. He testified that he did not stab Castano and that he believed that Castano had been stabbed prior to this incident.

I. DID THE COURT OF APPEALS ERR WHEN IT REINSTATED THE FIRST-DEGREE MURDER CHARGE BASED ON THE GRAND JURY INDICTMENT?

Appellant was charged with first-degree murder. A.R.S. § 13–1105. Pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 2.2(b), the state elected to commence prosecution by way of a complaint and preliminary hearing. At the hearing, a justice of the peace found probable cause to bind the appellant over for trial, but amended the state's information to charge only second-degree murder. Dissatisfied with this amendment, the state responded by seeking a first-degree murder indictment from the grand jury. After obtaining this indictment, the state filed a motion to dismiss the second-degree murder complaint.

The trial court dismissed the grand jury indictment charging first-degree murder and ruled that the state must prosecute under the second-degree murder charge

filed first. The state sought interlocutory review with the court of appeals. The court of appeals held for the state. It ordered the trial court to reinstate the first-degree murder indictment and to dismiss the complaint charging second-degree murder. The appellate court held that the grand jury indictment for first-degree murder controlled. The court reasoned that a grand jury indictment may be returned at any time before trial and, where the indictment is subsequent to a prior complaint, the indictment will supersede that complaint. Further, the court of appeals held that the complaint should have been dismissed since it was not within the power of the justice of the peace to amend the state's information in this fashion. Appellant's claims of double jeopardy, in this context, were also found to be without merit. *State v. Sup. Ct.*, 137 Ariz. 534, 672 P.2d 199 (1983).

Appellant, sought review of this decision by special action to this court. We declined to accept jurisdiction and appellant was subsequently tried for first-degree murder.

Appellant now contends that the court of appeals erred in ordering the trial court to reinstate the grand jury indictment for first-degree murder. We do not agree with appellant's contentions. The court of appeals properly decided these issues and we approve its reasoning.

## II. DID THE TRIAL COURT ERR IN GIVING A PREMEDITATION INSTRUCTION?

■ The trial court did not err in giving a premeditation instruction. A premeditation instruction may be given where there is evidence from which the jury could reasonably find that the defendant premeditated the victim's murder. *State v. McIntyre*, 106 Ariz. 439, 445, 477 P.2d 529, 535 (1970). Premeditation exists when a defendant acts with the knowledge or intention that he will kill another human being, and such knowledge or intention precedes the killing by a length of time to permit reflection. A.R.S. § 13–1101(1). This length of time can be as instantaneous as

the time it takes to make successive thoughts to kill and can be proved by circumstantial evidence. *State v. Lacquey*, 117 Ariz. 231, 234, 571 P.2d 1027, 1030 (1977).

■ In this case, testimony indicated that appellant may have first seen the victim in the illegal after-hours bar. The victim was intoxicated, was much smaller than appellant, and appeared to be an illegal alien. The victim repeatedly tried to purchase items with Mexican pesos and spoke only Spanish while at the bar. There was conflicting testimony as to whether the victim tried to exchange a 1000 peso bill. The state argued that appellant witnessed these transactions and realized that the man would be an ideal target. A police officer saw the appellant bending over the victim. The stab wounds, from which the victim died, were in an area certain to cause death. The two wounds in front of the body were deep and pierced through to the heart. The stab wound in the back entered the lungs. A 1000 peso bill was found on appellant shortly after his arrest. There was sufficient evidence to permit the trial judge to give a premeditation instruction.

## III. DID THE TRIAL COURT ERR IN GIVING A MANSLAUGHTER INSTRUCTION?

■ The trial court did not err in giving a manslaughter instruction. In potential death penalty cases, we require trial judges to instruct the jury on all lesser included offenses of homicide supported by the evidence. *State v. Vickers*, 129 Ariz. 506, 513, 633 P.2d 315, 321–22 (1981); *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Because appellant was charged with first-degree murder, in violation of A.R.S. §§ 13–1105 and 13–703, this was a potential death penalty case. Thus, instruction on manslaughter was proper if it was supported by the evidence.

Manslaughter can be committed in a variety of ways. *See* A.R.S. § 13–1103. For purposes of this case, manslaughter is the killing of a person upon a sudden quarrel

or in the heat of passion resulting from adequate provocation by the victim. A.R.S. § 13–1103(A)(2).

■ Appellant testified that he thought the victim had thrown something at his car. He stated that he stopped the car, got out, and approached the man. As he got closer the man tried to strike him with his fists and hit him several times in the face. From this testimony, the jury might well have concluded that this altercation stemmed from the victim's attack. A physician testified that it was unlikely that the victim would have survived long with the wounds he received. Thus, the jury might have disbelieved appellant's testimony that the victim had been stabbed prior to this incident. The jury could have properly concluded that appellant, angered by the victim's attack, fought back with a knife. The evidence was sufficient to support the trial judge's manslaughter instruction.

■ Appellant further contends that he was misled into believing that the state only wished to pursue a charge of first-degree murder. Appellant claims that he was not given notice that the state would try to obtain a conviction for a lesser included offense. This, appellant says, caused him to structure his defense only against first-degree murder and not against the lesser included charges. According to appellant's lawyer, appellant would not have taken the stand had they known he risked conviction of one of the lesser included offenses of homicide.

We find this argument without merit for the same reasons that we found the manslaughter instruction proper. Case law required the trial court to instruct on those lesser included offenses supported by the evidence. Similarly, the allegation of first-degree murder in the indictment should have put the appellant on notice of potential conviction of a lesser included offense. 17 A.R.S. Rules of Crim.Proc., rule 13.2(c). Appellant was not denied notice of the charges against him.

## IV. WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE MANSLAUGHTER CONVICTION?

■ At the close of the state's case, appellant moved for judgment of acquittal pursuant to 17 A.R.S. Rules of Crim.Proc., rule 20(a). Appellant now claims that the trial judge improperly considered his motion because the judge did not review the testimony of Dr. Alan Jones before making the ruling. We disagree with this contention.

During the presentation of the rule 20 motion, the trial judge stated that he did not remember Dr. Jones' testimony concerning the stab wound to the heart. At that point, the state's attorney refreshed the trial judge's memory as to the substance of that particular part of Dr. Jones' testimony. This characterization accurately corresponded with the doctor's testimony and appellant's attorney essentially agreed with it. Thus, the judge was informed as to the portion of Dr. Jones' testimony he did not remember. The trial judge did not improperly consider appellant's motion.

Appellant further contends that there was no substantial evidence to warrant the jury verdict of manslaughter. 17 A.R.S. Rules of Crim.Proc., rule 20(b). Appellant urges that it was error for the trial judge not to enter a judgment of acquittal. We disagree.

■ Reversible error occurs only when there is an absence of probative evidence from which a rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court, in reviewing the sufficiency of the evidence, must consider the evidence in a light most favorable to the state and resolve all reasonable inferences against appellant. *State v. Lawrence*, 123 Ariz. 301, 307, 599 P.2d 754, 760 (1979). As we previously noted, there was sufficient evidence to warrant the manslaughter instruction. This same evidence properly supports the jury's verdict of manslaughter.

## V. DID THE TRIAL COURT ERR IN NOT GRANTING A MISTRIAL BASED ON JURY MISCONDUCT?

During the course of their deliberations, the jury sent a note to the trial judge. The note indicated that although eleven jurors favored manslaughter, one favored second-degree murder. The jurors asked whether they had to return a unanimous verdict or whether the present status of deliberations was sufficient. The trial judge instructed them that the law required a unanimous verdict. Shortly thereafter, the jurors returned a unanimous verdict.

Appellant contends that the jurors' note violated the trial judge's admonition not to discuss the case. Further, appellant argues that when the trial judge instructed the jury to return a unanimous verdict, he put impermissible pressure on the lone dissenting juror. According to appellant, this was grounds for a mistrial.

We believe the trial judge did not err in denying appellant's motion for a mistrial. It was clearly not misconduct for the jury to address questions to the trial judge. The trial judge did not solicit the status of the jury's deliberations, nor did he exert any pressure upon them to come to a decision. *Cf. State v. Roberts*, 131 Ariz. 513, 642 P.2d 858 (1982). In response to the jury's inquiry, he stated: "I instruct you, ladies and gentlemen, that all 12 of you must concur on your verdict." We believe that any pressure exerted upon the dissenter stemmed from the other jurors and not from the trial judge. Pressure from other jurors, generally, will not serve as the basis for a mistrial. *Cf. State v. Cipriano*, 24 Ariz.App. 478, 480, 539 P.2d 952, 954 (1975). There were no grounds upon which the trial judge should have declared a mistrial.

## VI. DID THE SENTENCE APPELLANT RECEIVED VIOLATE THE EIGHTH AMENDMENT?

After appellant's conviction for manslaughter, the jury also found that the crime was dangerous, that the appellant had three prior felony convictions, and that he was on probation from one of these felony convictions at the time of the murder. Pursuant to A.R.S. § 13–604.01(A), appellant was sentenced to life imprisonment without possibility of parole for twenty-five years.

Appellant contends that this sentence was cruel and unusual in violation of the eighth amendment to the United States Constitution.

According to *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1984), the dispositive question is whether the appellant's sentence was disproportionate to the crime committed. Disproportionality analysis requires a tripartite inquiry comparing: "(i) the gravity of the offense and the harshness of the penalty, (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at ——, 103 S.Ct. at 3010, 77 L.Ed.2d at 649–50.

Appellant brutally stabbed Francisco Castano. This was a grave offense requiring a severe penalty. At the time of this homicide, appellant was on probation from the felony of first degree burglary. Appellant also had been convicted of petty theft with a prior and grand theft from a person. Appellant's crime compared with other offenders sentenced pursuant to A.R.S. § 13–604.01(A) is not disproportionate. *Cf. State v. Noriega*, 142 Ariz. 474, 690 P.2d 775 (1984); *State v. McNair*, 141 Ariz. 475, 687 P.2d 1230 (1984).

Repeat offenders in other jurisdictions fare similarly. The sentence imposed on appellant was not disproportionate to that which other states would have imposed. Appellant's punishment was neither cruel nor unusual.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none.

Judgment of conviction and sentence affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON, J., concur.

FELDMAN, Justice, specially concurring:

I join in the opinion, but concur separately for the reasons set forth in *State v. McNair*, 141 Ariz. 475, 687 P.2d 1230 (1984).